MODIFIED: April 29, 2014



# MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

CRAIG HERRINGTON,               )
                               )
          Respondent,           )    WD75618
     v.                         )
                               )    OPINION FILED:
MEDEVAC MEDICAL RESPONSE,        )
INC.,                           )    March 18, 2014
                               )
          Appellant.            )

**Appeal from the Circuit Court of Jackson County, Missouri**
**Honorable Jack Richard Grate, Judge**

**Before Division Three:  Anthony R. Gabbert, P.J.,**
**Victor C. Howard, and Thomas H. Newton, JJ.**

## Summary

Medevac Medical Response, Inc. (Medevac) appeals for a new trial, based upon the trial court's refusal to instruct the jury on comparative fault and submission of a negligence claim for failure to keep a careful lookout.  We affirm.

## Factual and Procedural Background

In 2009, Mr. Craig Herrington was a locomotive engineer for Amtrak, with a railroad career that spanned more than 30 years.  His route ran between

St. Louis, Missouri, and Kansas City, Missouri. On occasion, track repair prevented trains from completing the trip, so westbound crew and passengers would deboard in Jefferson City and proceed by chartered bus.

On February 9, 2009, Mr. Herrington was en route to Kansas City, Missouri, via chartered bus when it made a sudden stop at an intersection to avoid colliding with a Medevac ambulance.[1] The ambulance drove through a red light, with its lights flashing but no siren. The bus had the green light and was traveling at a speed of 35 mph. As the bus braked to avoid a collision, Mr. Herrington was walking in the aisle to return to his seat after using the restroom. He was holding the seat backs as he walked. The sudden stop caused him to lurch forward, fall, and sustain injuries[2] that prevented him from returning to full-time work.[3] No other passengers were injured.

Mr. Herrington sued Medevac, among other defendants,[4] arguing that the ambulance crew's failure to use lights and sirens as the unit ran the red light violated Missouri law, industry standards, and company policy. Medevac

---

[1] Medevac, also known as American Medical Response, operates a fleet of private ambulances across the country, including in Independence, Mo., where the incident took place.

[2] Mr. Herrington sustained cuts to the head that required stitches, a herniated disc in the neck that led to multiple spinal injections, and two spinal surgeries.

[3] In 2008, Mr. Herrington worked as a locomotive engineer at an annual salary of $104,140.44. After his injuries disqualified him from the job, he has been unable to find comparable or alternative employment. At the time of trial, he was 59 years old; he had planned to retire in 2017 at age 65, estimating a loss of earnings exceeding $850,000 and a loss of fringe benefits exceeding $80,000.

[4] Mr. Herrington filed suit against Amtrak, which attached the bus company as a third party, who attached Medevac as a fourth party. He amended the petition to add a negligence claim against Medevac. Medevac filed an answer alleging the affirmative defense of comparative fault. Mr. Herrington later settled with Amtrak, dismissed Amtrak and the bus company, and proceeded to trial against Medevac.

insisted that all passengers had been instructed to remain in their seats unless there was an emergency, and that Mr. Herrington's decision to use the restroom a few minutes before the next scheduled stop did not constitute an emergency that justified being out of his seat at the time of the sudden stop. Medevac argued that the jury should thus be instructed on comparative fault because substantial evidence existed for a finding that Mr. Herrington's conduct of being out of his seat on a moving bus contributed to cause the damages he sustained.

During a pre-trial conference, Mr. Herrington argued that the issue of comparative fault was inapplicable as a matter of law because there is nothing negligent about standing to use a restroom on a bus. Medevac argued that the evidence was admissible and that the issue was one for the jury to determine. Medevac proposed the following comparative fault instruction:

> In your verdict[,] you must assess a percentage of fault to plaintiff, whether or not defendant was partly at fault, if you believe: First, either: plaintiff failed to keep a careful lookout for his own safety, or plaintiff got out of his seat while the bus was being operated through city traffic, or plaintiff failed to properly secure and balance himself, or plaintiff knew the bus might have to stop suddenly and plaintiff knowingly accepted that danger[;] and Second, plaintiff, in any one or more of the respects submitted in Paragraph First, was thereby negligent[;] and Third, such negligence of plaintiff directly caused or directly contributed to cause any damage plaintiff may have sustained.

> Medevac also proposed the following instruction on negligence:

> The term 'negligent' or 'negligence' as applied to the driver of a motor vehicle means the failure to use that degree of care that a very careful person would use under the same or similar

3

circumstances. The term 'negligent' or 'negligence' as applied to a passenger in a motor vehicle means the failure to use that degree of care that an ordinarily careful person would use under the same or similar circumstances.

The trial court denied both instructions, concluding that neither should be presented to the jury. The court reasoned that Mr. Herrington acted with reasonable care in visiting the restroom provided for passenger use, he held onto backs of seats as required when returning to his seat, and thus did not breach any duty that invited an assessment of his culpability.

In Mr. Herrington's negligence claim instruction against Medevac, he argued that the ambulance failed to keep a careful lookout, in that the time and distance at the point of the potential collision triggered a specific duty to take effective precautionary action. After it overruled Medevac's objection, the trial court gave the following instruction to the jury:

> Your verdict must be for plaintiff if you believe: First, either: defendant failed to keep a careful lookout, or defendant failed to use flashing lights, or defendant failed to use sirens, or defendant drove past the red light without slowing down as necessary for safe operation, and Second, defendant, in any one or more of the respects submitted in paragraph First, was thereby negligent, and; Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

> The term 'negligent' or 'negligence' as used in these instructions means the failure to use the highest degree of care. The phrase 'highest degree of care' means that degree of care that a very careful person would use under the same or similar circumstances.

The jury found in favor of Mr. Herrington, awarding him $1.3 million. Medevac filed a post-trial motion for a new trial because of the trial court's

4

refusal to instruct the jury on comparative fault, and it requested a credit for a co-defendant settlement. The trial court granted an amended judgment, reducing the award to $1 million, but denied Medevac's request for a new trial. Medevac appeals.

## Standard of Review

Whether a jury was properly instructed is a question of law that we review *de novo*. *Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010). "A trial court's refusal to give an instruction is reviewed for an abuse of discretion." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 97 (Mo. banc 2010). When reviewing the sufficiency of the evidence to support the submission of a jury instruction, we view the evidence and its reasonable inferences in the light most favorable to the verdict. *Euton v. Norfolk & Western Ry. Co.*, 936 S.W.2d 146, 152 (Mo. App. E.D. 1996).

## Legal Analysis

Medevac raises two points on appeal, claiming that both warrant a finding for the case to be remanded for a new trial. In the first point, Medevac argues that the trial court erred in refusing its instruction for comparative fault. Medevac claims that substantial evidence existed for the jury to find that Mr. Herrington's choice to use the restroom on a moving bus in city traffic constituted conduct that contributed to his injuries from the sudden stop the bus made to avoid a collision with the ambulance. Because all passengers had been instructed to remain in their seats unless there was an emergency and to hold

5

onto the overhead or seat rails if they left their seats, Medevac argues that Mr. Herrington's choice to use the restroom when the next stop was a few minutes away was not an emergency that justified leaving his seat. Medevac asserts that this choice contributed to Mr. Herrington's position to be injured when the bus came to a sudden stop. Medevac contends that it was thus materially prejudiced by the trial court's refusal to submit the comparative fault instruction because the instruction was supported by the evidence and pleadings.

"If there is evidence from which a jury could find that a plaintiff's conduct contributed to cause some of the damages the plaintiff sustained, the parties to a negligence action are entitled to have the jury instructed under comparative fault principles." *Walley v. La Plata Volunteer Fire Dep't*, 368 S.W.3d 224, 229 (Mo. App. W.D. 2012). When considering the propriety of an instruction, "we view the evidence in the light most favorable to the submission of the instruction." *Collier v. Bi-State Dev. Agency*, 700 S.W.2d 479, 480 (Mo. App. E.D. 1985).

Medevac asserts that "[c]omparison of fault is appropriate for bus passenger plaintiffs," citing two cases. However, the cases Medevac cites in support are distinguishable and do not apply to our facts. Neither involves a bus that provides a restroom, which implies a justifiable reason for passengers to stand while in transit. In the first case, a student on a school bus lost her balance after the driver closed the door to exiting passengers and moved the

6

bus twenty feet forward. *Cooks v. Normandy Sch. Dist.,* 778 S.W.2d 339, 340-41 (Mo. App. E.D. 1989). In the second case, a passenger was injured after the bus came to a sudden stop, causing her to trip over a divider. *Robinson v. Bi-State Dev. Agency*, 767 S.W.2d 565 (Mo. App. E.D. 1988). The court affirmed the jury's finding that she was 50 percent at fault. *Id.* However, the two-page opinion provides no other factual details to compare to this case. *See id.*

Here, the trial court deemed Medevac's instructions on comparative fault and negligence to be inapplicable because Mr. Herrington's actions were not negligent. We agree. He used the rear-bus restroom provided for passenger use, and he acted with reasonable care by holding onto the backs of seats while returning to a seat. No evidence has been presented from which a jury could find that Mr. Herrington's conduct contributed to his injuries. Therefore, the trial court did not err in refusing the jury instruction on comparative fault. Point one is denied.

In the second point, Medevac argues that the trial court erred in submitting a negligence instruction based upon Mr. Herington's claim that the ambulance failed to keep a careful lookout. Medevac contends that Mr. Herrington did not provide sufficient evidence that would lead a jury to find that it did not keep a careful lookout, nor that the time and distance of the potential danger of collision with the bus triggered the duty to take effective precautionary action.

7

"The essence of [a] failure to keep a careful lookout claim is a failure to see and a failure to act." *Hayes*, 313 S.W.3d at 650 (internal quotation marks and citation omitted). To prevail on such a claim, a "plaintiff must present substantial evidence from which a jury could find that in the exercise of the highest degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle in time to avoid the impact." *Saunders v. Baska*, 397 S.W.3d 44, 49 (Mo. App. W.D. 2013). "A party seeking a 'failure to keep a lookout' instruction has the burden of showing that the other party, had he been keeping a careful lookout, could have reacted in time to avoid the accident." *Spann ex rel. Spann v. Jackson*, 84 S.W.3d 478, 481 (Mo. App. E.D. 2002).

"Substantial evidence has been defined as competent evidence from which the trier of fact could reasonably decide the case." *Fowler v. Minehart*, 412 S.W.3d 917, 920 (Mo. App. S.D. 2013). In order for disjunctive verdict directing instructions to be deemed appropriate, each alternative must be supported by substantial evidence. *Marion v. Marcus*, 199 S.W.3d 887, 894 (Mo. App. W.D. 2006). In this case, the ambulance failed to stop at the intersection, and it used its flashing lights without sirens. The jury could reasonably infer that, had the ambulance briefly stopped or used its siren, the bus would have had additional notice, eliminating the need to brake so abruptly. Mr. Herrington has established each alternative in the "careful

8

lookout" jury instruction with substantial evidence.  Therefore, the trial court did not err in submitting the instruction to the jury.  Point two is denied.

## Conclusion

For the foregoing reasons, we affirm.

/s/ THOMAS H. NEWTON___
Thomas H. Newton, Judge

Gabbert, P.J., and Howard, J. concur.