

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| THOMAS HOST, | ) | |
| | ) | |
| Respondent, | ) | WD76934 |
| | ) | |
| v. | ) | OPINION FILED:  May 5, 2015 |
| | ) | |
| BNSF RAILWAY COMPANY, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Cass County, Missouri**
The Honorable William B. Collins, Judge

Before Division Two:  Lisa White Hardwick, Presiding Judge, Victor C. Howard, Judge
and Cynthia L. Martin, Judge

BNSF Railway Company ("BNSF") appeals from the entry of judgment in favor of Thomas Host ("Host") following a jury trial on Host's claim for damages under the Federal Employers' Liability Act ("FELA").[1]  BNSF claims several errors involving the admission of evidence, the submission of Host's claims to the jury, and jury instructions, any one of which BNSF contends warrants a new trial.  Finding no prejudicial error, we affirm.

---

[1] 45 U.S.C. section 51 *et seq.*

Host was hired by BNSF in January 2007. In 2010, Host began working in the Argentine railway yard in Kansas City as a switchman and conductor.

At approximately 10:00 p.m. on February 19, 2011, Host and his co-worker received an assignment to move two locomotives from the diesel shop facility to another part of the railway yard and to couple the locomotives with train cars slated to leave the yard. Host and his co-worker began the process of moving the locomotives into the railway yard. The moving process took over an hour because of traffic in the yard. Once the locomotives reached their destination, Host moved from the lead locomotive to the trailing locomotive, entering on the conductor's side. Host remained in the cab of the locomotive awaiting further orders.

Early the next morning, the trainmaster gave Host permission to couple the locomotive with the train cars. Host was required to visually observe the coupling. He left the cab and opened the door to the locomotive's stairs on the engineer's side, preparing to exit the locomotive. Host shined his lantern in front of him and then stepped out of the locomotive. His foot slipped on the threshold. Host missed the next step and landed on the locomotive's walkway. Host felt excruciating pain in his lower leg and was transported to a hospital.

A medical examination revealed that Host had suffered a fracture to his ankle that required three surgeries to repair. After the final surgery, Host's doctor issued permanent

---

[2]We view the facts in the light most favorable to the jury's verdict. *Goudeaux v. Bd. of Police Comm'rs of Kansas City*, 409 S.W.3d 508, 511 n.1 (Mo. App. W.D. 2013).

restrictions against walking on uneven ground and prolonged standing or walking. Host testified that, as a result of those restrictions, he could not continue to work for BNSF as a switchman and conductor.

Host filed suit against BNSF on August 8, 2011. Host's petition asserted two theories of recovery under the FELA: (1) general negligence; and (2) negligence *per se* based on BNSF's violation of the Locomotive Inspection Act ("LIA").[3] Host alleged that the locomotive steps were slippery due to the presence of oil, water, or some other substance, and that the steps had not been properly treated with a non-skid surface.

After trial to a jury, the trial court, over BNSF's objection, submitted Host's general negligence and negligence *per se* theories of recovery in separate jury instruction packages, each with its own verdict form. Contributory negligence was submitted as an affirmative defense in the general negligence instruction package. The jury found in favor of Host on both verdict forms. On the general negligence verdict form, the jury awarded Host $453,477.50. On the negligence *per se* verdict form, the jury awarded Host $906,975.00. The trial court accepted both verdicts but only entered judgment in Host's favor in the amount of the negligence *per se* verdict.

BNSF appeals. Additional facts are discussed in the analysis portion of this opinion as necessary.

### Summary of Issues on Appeal and Explanation for Order of Discussion

BNSF raises six points on appeal. It argues in Point One that the trial court erred in submitting Host's claims of general negligence and negligence *per se* to the jury and in

---

[3]49 U.S.C. section 20701 *et seq.*

denying its motions for directed verdict and for judgment notwithstanding the verdict ("JNOV") because there was "no evidence" that any slippery surface or the failure to properly treat locomotive surfaces caused Host's fall. BNSF argues in Point Two that the trial court erred as a matter of law in submitting Host's negligence *per se* claim because the locomotive on which Host was working was not "in use," a required condition to application of the LIA. BNSF argues in Point Three that the trial court erroneously permitted Host to argue general negligence based on evidence of defective handrails. BNSF alleges in Point Four that the trial court erred in admitting evidence of subsequent remedial measures to prove that BNSF was negligent. BNSF claims in Point Five that the trial court erroneously admitted the text of 49 C.F.R. section 229.119(c) into evidence because the regulation addresses subjects exceeding those relied on by Host to claim negligence *per se*, creating juror confusion. Finally, in Point Six, BNSF claims instructional error for three distinct reasons:[4] (a) the trial court erred in submitting Host's general negligence and negligence *per se* claims in two separate packages; (b) the verdict director for Host's general negligence claim was a "roving commission" as it instructed only that the jury must find that BNSF failed to provide a reasonably safe workplace; and (c) in connection with Host's general negligence claim, the trial court permitted the jury to reduce any award of damages by contributory negligence assessed to Host without requiring the jury to specify the percentage of fault assessed to Host.

---

[4]BNSF's sixth point on appeal is impermissibly multifarious, as it raises multiple, discrete complaints, that are required by Rule 84.04(d)(1)(A) to be asserted in separate points on appeal. Multifarious points on appeal preserve nothing for appellate review. *Barnett v. Rogers*, 400 S.W.3d 38, 47 (Mo. App. S.D. 2013). Because, as we explain, *infra*, our resolution of other points on appeal renders the claims of error raised in Points Six (b) and Six (c) moot, we exercise our discretion to disregard BNSF's Rule 84.04 violation.

4

Thematic throughout BNSF's brief is the oft-repeated assertion that Host was erroneously permitted to submit two separate claims to the jury (general negligence and negligence *per se*). This assertion is implicated directly by BNSF's Point Six (a). Because discussion and resolution of this issue will, as we explain, influence the order in which BNSF's remaining points should be addressed, if at all, we begin our analysis with Point Six (a).

## Point Six (a)

BNSF contends that the trial court erroneously instructed the jury, over its objections, by splitting an "indivisible" FELA claim into two distinct claims--a claim for general negligence and a claim for negligence *per se*. BNSF claims that this error is demonstrated by the fact that the general negligence and negligence *per se* claims were submitted in two jury instruction packages, which allowed the jury to enter two separate verdicts for two different amounts even though Host only had a single claim for damages under the FELA.

"Whether a jury was instructed properly is a question of law that this Court reviews *de novo*." *Doe 1631 v. Quest Diagnostics, Inc.*, 395 S.W.3d 8, 13 (Mo. banc 2013) (citing *Klotz v. St. Anthony's Med. Ctr.*, 311 S.W.3d 752, 767 (Mo. banc 2010)). "'If this Court finds that [an] instruction is erroneous, it must then determine whether the error misdirected, mislead or confused the jury, resulting in prejudicial error and justifying the grant of a new trial.'" *Id.* (quoting *First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 219 (Mo. banc 2012)).

BNSF's point requires us to address two distinct issues: (i) whether Host was impermissibly allowed to split a single FELA claim; and if not, (ii) whether it was error to submit separate theories seeking the same FELA damages in separate jury instruction packages.

The first of these two issues is not complicated to resolve. BNSF correctly observes that the "LIA does not confer a right of action on an injured plaintiff but rather allows a plaintiff to treat a proven LIA violation as negligence per se in an action under FELA." *Payton v. Union Pac. R.R. Co.*, 405 S.W.3d 1, 5 (Mo. App. E.D. 2013). BNSF acknowledges, however, that a claim under the FELA can be asserted based both on a theory of general negligence and on a theory of negligence *per se* because of a violation of the LIA. [Appellant's Brief p. 21]; *Urie v. Thompson*, 337 U.S. 163, 189 (1949); *Payton*, 405 S.W.3d at 5. Nothing in this record suggests that Host attempted to assert or submit a private cause of action for violation of the LIA. Rather, Host asserted and submitted a claim under the FELA based on both the theory of general negligence and the theory of negligence *per se*.

Nonetheless, BNSF argues that Host impermissibly split his FELA claim. BNSF bases this assertion solely on the fact that Host's general negligence and negligence *per se* theories were submitted in separate jury instruction packages. BNSF cites no authority for the proposition that the manner in which the jury was instructed operated to impermissibly "split" Host's FELA claim. *See Shiplet v. Copeland*, 450 S.W.3d 433, 444 (Mo. App. W.D. 2014) ("The failure to cite relevant authority supporting a point or to

6

explain the failure to do so preserves nothing for review." (internal quotation marks omitted)). BNSF's assertion is without merit.

BNSF's chief complaint is with the trial court's refusal of its tendered jury instructions which would have submitted the theories of general negligence and negligence *per se* in a single package with a single verdict form. Instead, over BNSF's objection, the trial court submitted Host's claims of general negligence and negligence *per se* in separate instruction packages with separate verdict forms. BNSF claims that this was error as a matter of law, as it resulted in "two different verdicts and awarded two different amount[s] of damages . . . for the same cause of action." [Appellant's Brief p. 50] Though we agree that Host's separate theories for recovery under the FELA are a part of a single claim for FELA damages that should have been submitted in a single verdict form, any "error" in the jury's rendering of duplicative and overlapping damage awards was resolved by the trial court's entry of judgment in only the amount awarded on Host's negligence *per se* claim.

It is uncontested that Host was entitled to submit his FELA claim to the jury under both a general negligence theory and a negligence *per se* theory. *See Dickerson v. St. Louis Pub. Serv. Co.*, 286 S.W.2d 820, 824 (Mo. 1956) (holding that "on this evidence a clearly submissible case of negligence was made against defendant, both under the ordinance and the common law"). "It is perfectly proper for a plaintiff to plead and to submit alternative theories for a single injury." *Trien v. Croasdale Constr. Co.*, 874 S.W.2d 478, 480 (Mo. App. W.D. 1994). The question, of course, is in what manner alternative theories for a single injury should be instructed. "Missouri courts have

7

allowed plaintiffs making submissible cases of both common law and *per se* negligence to offer separate jury instructions on each theory. They have also permitted such plaintiffs to offer a single instruction disjunctively submitting both theories of negligence." *King v. Morgan*, 873 S.W.2d 272, 278 n.5 (Mo. App. W.D. 1994) (citations omitted). However, because a plaintiff submitting on both theories "is entitled to only one recovery for his injuries . . . caution should be exercised in instructing the jury so as to avoid a duplicative or overlapping damage verdict." *Id.*

Though general negligence and negligence *per se* can be submitted by separate instructions or by a disjunctive submission, there is no authority permitting submission of the theories using separate verdict forms. A verdict form is not an instruction. *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 566 (Mo. App. W.D. 1999); *Affiliated Foods, Inc. v. Strautman*, 656 S.W.2d 753, 759 (Mo. App. W.D. 1983). However, the use of a verdict form influences the decision whether to package instructions. "'Packaging' is designed to simplify the submission of complex cases. In a simple case, where only one claim is involved, 'packaging' is not necessary and to require its use in such a case would only serve to complicate the system." MAI 2.00(C). "Any case having more than one verdict form is a complex case." *Cotner Prods., Inc. v. Snadon*, 990 S.W.2d 92, 99 (Mo. App. S.D. 1999). Generally speaking, however, multiple theories seeking the same recovery against one or more defendants are considered a single "claim" requiring only a single verdict director. *See Oliver v. Ford Motor Credit Co.*, 437 S.W.3d 352, 361 (Mo. App. W.D. 2014) (holding "a single plaintiff's claim against multiple defendants should generally be contained within a single package"); Mark G. Arnold, *How and Why to*

8

*Package Claims Under MAI*, 665 J. Mo. Bar 226, 226 (2009) ("[A] 'claim' for purposes of MAI 2.00 depends on the damages sought. If a party's damages are the same or overlapping, that is a single 'claim,' submitted in a single MAI package, no matter how many different defendants or theories of liability plaintiff may have.").

Here, there is no question that Host's separate theories of recovery for general and *per se* negligence constituted a single "claim" seeking the same damages under the FELA. However, it is also uncontested that although both theories sought recovery for the same damages, the theory of common law damage was subject to the defense of contributory negligence, where the theory of negligence *per se* under the FELA was not. 45 U.S.C. sections 53-54; *Wright v. Ark. & Mo. R.R. Co.*, 574 F.3d 612, 620 (8th Cir. 2009) ("If the LIA applies, then the railroad will be held strictly liable and may not rely on the defenses of contributory negligence or assumption of risk.").

Recognizing this prospect, MAI 2.00(G) provides:

> In complex litigation with multiple theories of liability . . . , elements of damages under various theories may be identical in some respects, distinct in others, and overlapping in still others. The issue will then arise as to whether multiple theories should be submitted in a single package (with a single damage instruction and a single verdict form) or in separate packages (with a separate damage instruction and a separate verdict form for each theory). The Committee takes no position requiring a particular approach in all such cases. The facts and law applicable to each case will determine the best approach in a given case. The problems to be considered in making the selection of a single package or multiple package approach include the issues of duplicative or overlapping damages, the judgment to be entered if a jury returns damages on more than one theory submitted as separate packages, and the effect of reversal on appeal on one theory but an affirmance on another. Care should be taken to thoroughly consider the impact of duplicate or overlapping damages under separate theories so that the jury is given adequate guidance on the elements of damages and an

9

appropriate means to express the jury's intent without confusion as to the total judgment to be entered by the trial court.

Though the MAI Committee has expressed no position on packaging multiple theory/single claim cases, our decisional law has uniformly held that that it is "improper to give instructions that allow a jury to return damages that overlap or duplicate." *Trien*, 874 S.W.2d at 481; *see also Kincaid Enters., Inc. v. Porter*, 812 S.W.2d 892, 901 (Mo. App. W.D. 1991) ("[I]nstructions that allow a jury to return damages that overlap or duplicate are error."). Measured against this unambiguous precedent, it would appear that the trial court erred in submitting Host's multiple theories seeking to recover the same FELA damages in two instruction packages employing two verdict forms.

This apparent error does not, however, require reversal in this case. Where damages sought on multiple theories are the same, damage awards on the multiple theories merge. *Trimble v. Pracna*, 167 S.W.3d 706, 711 (Mo. banc 2005) (citing *Davis v. Cleary Bldg., Corp.*, 143 S.W.3d 659, 670 (Mo. App. W.D. 2004)). In fact, it is common for our appellate courts to resolve error resulting from the use of multiple verdict forms yielding duplicative damage awards by either remanding with instructions to set aside one of the duplicative verdicts or by exercising our authority pursuant to Rule 84.14 to enter such judgment as is required. *See, e.g.*, *McGuire v. Kenoma, LLC*, 375 S.W.3d 157, 177-79 (Mo. App. W.D. 2012) (addressing entry of duplicative nuisance awards on separate verdict forms and relying on Rule 84.14 to "take the corrective action of ordering that only one $75,000 nuisance judgment stand in each" of the individual plaintiff's favor against defendant); *Trien*, 874 S.W.2d at 480-81 (finding error in

10

accepting two verdicts submitted on separate theories seeking the same damages which each awarded the same amount of damages, but resolving the error by setting aside the trial court's total judgment and remanding with instructions to enter a new judgment in one-half the amount); *Kincaid Enters., Inc.*, 812 S.W.2d at 900-01 (finding error in enabling the "jury to return verdicts for redundant damages," and then in accepting both verdicts, but resolving the error by reversing the judgment and remanding "with directions to set aside the verdict for $35,000 for breach of contract and to enter judgment for [plaintiff] for $36,000 on the verdict for fraudulent representation").

Here, the jury returned a verdict on Host's general negligence claim in the amount of $453,477.50. It returned a verdict on Host's negligence *per se* claim in the amount of $906,975.00, almost exactly twice the amount of the general negligence verdict. The trial court accepted both verdicts, but it entered judgment in favor of Host in the amount of the higher of the two verdicts and thus on the negligence *per se* theory. In effect, the trial court did exactly what this court would have done had the case presented on appeal following the entry of judgment on both verdicts. Any error committed by the trial court in submitting Host's multiple theories as to permit the jury to enter duplicative or overlapping judgments was cured by the trial court's entry of judgment on the higher verdict only, and thus in a manner that did not afford Host a double recovery.

Unfazed, BNSF argues, without explanation or development of its assertion, that there was no basis for the trial court to determine how the jury arrived at its separate damage awards and thus no basis for the trial court or an appellate court to remediate the

11

error in submitting Host's distinct theories for recovering the same FELA damages in two jury instruction packages. BNSF's summary assertion is without merit.

Though improvidently submitted in two packages, the general and *per se* negligence theories were submitted with identical damage instructions, save an added reference to contributory negligence in the general negligence package. The damage instruction in both packages read as follows:

> In verdict [A or B],[5] if you find in favor of Plaintiff Thomas Host, then you must award Plaintiff such sum as you believe will fairly and justly compensate Plaintiff for any damages you believe Plaintiff sustained and is reasonably certain to sustain in the future as a result of the February 20, 2011 incident. Any award of future pecuniary damages must be included at present value. Any award you make is not subject to income tax. If you find that Plaintiff failed to mitigate damages as submitted in Instruction No [10 for the negligence *per se* package; 17 for the general negligence package], in determining Plaintiff's total damages you must not include those damages that would not have occurred without such failure.

The damage instruction in the general negligence instruction package added the following sentence:

> If you find Plaintiff contributorily negligent as submitted in Instruction Number 16, then your award must be determined by diminishing Plaintiff's total damages in proportion to the amount of negligence attributable to Plaintiff.

Plainly, the total damages to be awarded Host under both negligence theories were to be calculated by the jury in exactly the same manner and based on exactly the same evidence, save only the requirement to reduce Host's total damages by contributory negligence on the general negligence verdict form. The separate damage awards entered by the jury, therefore, were necessarily redundant, with the only variable being the

---

[5]Verdict A was the negligence *per se* verdict form. Verdict B was the general negligence verdict form.

12

reduction for contributory fault in connection with the general negligence claim. The trial court appropriately entered judgment, therefore, in Host's favor on the higher of the two verdicts. *Kincaid Enters., Inc.*, 812 S.W.2d at 900-01 (where appellate court remanded with instructions to enter judgment on the greater of two redundant jury verdicts).

Ironically, though both of Host's theories should have been submitted in a single, well-crafted verdict form as BNSF requested, had that occurred, the result at trial would have been exactly the same as the result ultimately reached by the trial court. A single verdict form would have required the jury to specify Host's total damages and would in some fashion have required the jury to specify the proportion of those damages as to which it believed Host to be contributorily at fault. In that case, the trial court would have accepted the verdict but would have entered a monetary judgment in Host's favor in the amount of the total damage award without reduction for contributory fault as contributory fault is not a defense to a FELA claim predicated on a theory of negligence *per se*. 45 U.S.C. sections 53-54. BNSF has failed to demonstrate that it suffered any prejudice from the trial court's erroneous submission of Host's multiple negligence theories in two jury instruction packages over BNSF's objection.

Point Six (a) is denied.

Our disposition of Point Six (a) influences our analysis of BNSF's remaining points on appeal. Because judgment was entered in favor of Host on the negligence *per se* theory, we will first consider BNSF's claims of error addressing that theory of recovery. Unless we conclude that the negligence *per se* theory was erroneously

13

submitted or that some other error prejudicially influenced the jury's return of a verdict on that theory, we need not determine BNSF's points on appeal that involve Host's general negligence theory because such error, if any, will be rendered harmless.[6]

We turn our attention, therefore, to the following points on appeal: Point Two (alleging error as a matter of law in submitting the negligence *per se* theory because the locomotive on which Host was injured was not "in use"); Point One (alleging error in the submission of the negligence *per se* theory because there was no evidence that any slippery surface or the failure to properly treat locomotive surfaces caused Host's fall); Point Four (alleging that the trial court erred in admitting evidence of subsequent remedial measures to prove that BNSF was negligent); and Point Five (alleging error in admitting the text of 49 C.F.R. section 229.119(c)).

**Point Two**

In its second point on appeal, BNSF argues that it was error to submit Host's negligence *per se* claim as a matter of law because the LIA applies only to a locomotive that is "in use." According to BNSF, the locomotive on which Host was injured was not "in use."

The LIA regulates when "[a] railroad carrier may use or allow to be used a locomotive or tender on its railroad line." 49 U.S.C. section 20701. As such, a body of

---

[6]BNSF effectively admits as much in its Reply Brief where it acknowledges Host's argument that BNSF suffered no harm in connection with the claim of error involving evidence of a design defect--a claim of error applicable only to the general negligence submission--because the trial court rendered judgment upon the negligence *per se* verdict. [Appellant's Reply Brief p.11 n.7] In response, BNSF argues only that the negligence *per se* judgment cannot stand given claimed errors on appeal relating to that judgment, thus requiring us to consider and determine the claimed errors relating to the general negligence submission. *Id.* To the extent we find no merit to BNSF's claims of error relating to the negligence *per se* judgment, BNSF concedes we need not address claims of error relating to the general negligence submission.

law has developed addressing whether a locomotive is "in use" and thus subject to the LIA. The determination of whether the locomotive on which Host was injured was "in use" was a question of law to be determined by the trial court. *Wright*, 574 F.3d at 620 (citing *Steer v. Burlington N., Inc.*, 720 F.2d 975, 977 n.4 (8th Cir. 1983) (addressing the Boiler Inspection Act, a precursor to the LIA)). Here, the trial court concluded that the subject locomotive was "in use" at the time of Host's injury. [Tr. 1405:10-16] We review the trial court's legal determinations *de novo*. *Pearson v. Koster*, 367 S.W.3d 36, 47 (Mo. banc 2012); *see also Deans v. CSX Transp., Inc.*, 152 F.3d 326, 329 (4th Cir. 1998) (holding that appellate court reviews trial court's "in use" determination *de novo*).

BNSF and Host agree that the purpose of the "in use" limitation is to encourage and to allow railroads to remedy hazardous conditions by relieving them of the strict liability imposed for violation of the LIA when a locomotive is being inspected, repaired, or serviced. *Wright*, 574 F.3d at 620 (holding that "[t]he 'in use' limitation gives the railroad an opportunity to remedy hazardous conditions before strict liability attaches to claims made by injured workers"); *Steer*, 720 F.2d at 976-77 ("'Congressional intent and the case law construing the statute clearly exclude those injuries directly resulting from the inspection, repair, or servicing of railroad equipment located at a maintenance facility.'" (quoting *Angell v. Chesapeake & Ohio Ry. Co.*, 618 F.2d 260, 262 (4th Cir. 1980))). There appears to be a split of authority amongst federal circuits about when a locomotive is "in use." A few circuits apply bright-line tests that hold that a locomotive is not "in use" until it has been assembled, inspected, and released for departure from the

yard[7] or until the locomotive is "engaged in moving interstate or foreign traffic."[8] The weight of authority has rejected bright-line tests for determining whether a locomotive is "in use" in favor of a more flexible test that explores a number of factors and looks primarily at "where the train was located at the time of the accident and the activity of the injured party." *Deans*, 152 F.3d at 329.

Both parties agree that the Eighth Circuit Court of Appeals has adopted the *Deans* test and thus looks at the totality of the circumstances to determine whether a locomotive is "in use" at the time of injury. *Wright*, 574 F.3d at 620-21 (addressing the split of authority and the rejection of a bright-line test in *Deans*). That is relevant to our *de novo* review. Although we are not bound to follow Eighth Circuit precedent, *State v. Storey*, 901 S.W.2d 886, 900 (Mo. banc 1995), we "look respectfully to such opinions for such aid and guidance as may be found therein." *Hanch v. K.F.C. Nat'l Mgmt. Corp.*, 615 S.W.2d 28, 33 (Mo. banc 1981). That is particularly so where, as here, Host's case could either have been brought in the federal courts or in state court. *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165 (2007) ("FELA provides for concurrent jurisdiction of the state and federal courts . . . ."). This militates in favor of consistency in the legal standards to be applied by our state courts and the Eighth Circuit if at all possible. *See, e.g.*, *A.H., by and through next friend D'avis v. Independence Sch. Dist.*, WD77837, 2015 WL 1548879, at *4 (Mo. App. W.D. Apr. 7, 2015) (holding that Eighth Circuit requirement of notice as required condition to stating a claim under the Individuals with

---

[7]*Trinidad v. S. Pac. Transp. Co.*, 949 F.2d 187, 189 (5th Cir. 1991).
[8]*Estes v. S. Pac. Transp. Co.*, 598 F.2d 1195, 1198 (10th Cir. 1979).

Disabilities Education Act should be adopted by Missouri appellate courts given concurrent state and federal appellate jurisdiction from administrative hearing commission determinations regarding such claims).

The following facts are uncontested. On the day of his injury, Host and another worker were directed at about 10:00 p.m. to report to the BNSF diesel shop facility to drive two locomotives out and to couple them to an outbound train of railcars that would be leaving the yard. After retrieving the locomotives, the two men began moving the locomotives into the yard. This process took more than an hour because of traffic in the yard. Host and his co-worker reached their destination around midnight. While the co-worker remained at the controls of the lead locomotive, Host walked to the trailing locomotive to monitor the connecting of the locomotives to the rail cars. Eventually, at about 2:00 a.m., the trainmaster gave Host and his co-worker permission to begin the "shove back"--the process that coupled the locomotives with the train cars. It was at this point that Host exited the locomotive on the engineer's side in order to visually observe the coupling of the cars. Host was injured when exiting the locomotive.

Plainly, at the time of Host's injury, the locomotive he exited was "in use" based on the totality of the circumstances. The locomotive had been released from the diesel repair shop and was being moved out into the yard to be coupled with other train cars. *See Angell*, 618 F.2d at 262 (locomotive being moved "to another track . . . to later pull a train" suggests that the locomotive "was not in need of further repair or servicing" and was "in use"). No evidence suggests that the locomotive was undergoing inspections in preparation for its release back into service. *See Deans*, 152 F.3d at 330 (locomotive

17

being prepared for outbound trip was "in use" even though it had not undergone final pre-departure inspection). BNSF does not identify *any* evidence that suggests Host was injured while the locomotive was subject to repair or inspection, or as a result of the inspection, repair, or servicing of the locomotive. *Cf. Wright*, 574 F.3d at 615, 619-20, 622 (train not "in use" where it was parked on a "repair in place" track and blue-flagged, meaning it was marked to prevent its use in service). Rather, BNSF concedes that Host was preparing to visually observe the coupling of the locomotive with other train cars when he was injured.

Given the uncontested facts, the trial court did not err as a matter of law in concluding that the locomotive was "in use" at the time of Host's injury. Our conclusion is consistent with Congressional intent to exclude application of the LIA only where injury resulted "from inspection, repair, or servicing of railroad equipment located at a maintenance facility." *Steer*, 720 F.2d at 976-77.

Point Two on appeal is denied.

### Point One

BNSF argues in its first point on appeal that it was error to submit Host's negligence *per se* claim to the jury as a matter of law and to deny BNSF's motion for new trial and for JNOV because Host did not present evidence of causation.[9] In particular,

---

[9]BNSF's first point on appeal makes the same assertion with respect to Host's general negligence theory. As we have explained, however, the trial court entered judgment in Host's favor on only the negligence *per se* theory. Our discussion of Point One focuses, therefore, on negligence *per se*. As a practical matter, however, our discussion applies equally to Host's general negligence theory, as both theories relied for their proof of causation on evidence of a slippery substance on the locomotive stairs and/or the absence of a non-skid surface on the stairs. Moreover, because both theories of negligence under the FELA should have been submitted using a single verdict form and because both theories could either have been separately or disjunctively instructed, *King*, 873 S.W.2d at 278, both submissions must be supported by the evidence. *Sayers v. Haushalter*, 493 S.W.2d 406, 409 (Mo. App.

18

BNSF argues that Host presented "no evidence that any slippery substance caused his fall [and] that BNSF's failure to properly treat locomotive surfaces played any part in his fall." [Appellant's Brief p. 20] BNSF claims that the evidence presented at trial conclusively demonstrated that the opposite was true: no slippery substances were present where Host fell and BNSF's treatment or lack of treatment of locomotive surfaces played no part in Host's fall.

Reviewing the denial of motions for directed verdict and JNOV requires the same inquiry: Did the plaintiff present a submissible case by offering substantial evidence to support every element essential for liability? *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 95 (Mo. banc 2010). To make that determination, we review the evidence in the light most favorable to the jury's verdict, giving the plaintiff the benefit of all reasonable inferences and disregarding all conflicting evidence and inferences. *Id.* We will reverse the trial court only if there is a "complete absence of probative fact to support the jury's conclusion." *Kerr v. Vatterott Educ. Ctrs., Inc.*, 439 S.W.3d 802, 809 (Mo. App. W.D. 2014) (internal quotation marks omitted). In other words, a directed verdict or a JNOV is appropriate if reasonable minds could *only* find in favor of the defendant. *Id.*

The "FELA makes the railroad liable for 'injury or death resulting in whole or in part from the negligence' of the railroad or its employees, and this has been interpreted to mean that the railroad is liable if 'the proofs justify with reason the conclusion that

1973) (holding that where plaintiff submitted "case to the jury upon three theories--common law and two separate violations of a county ordinance--negligence *per se*," each submission, whether in the conjunctive or disjunctive, must be supported by the evidence).

employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought.'" *Payton*, 405 S.W.3d at 4-5 (quoting *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)). The "LIA supplements FELA by imposing on interstate railroads an absolute and continuing duty to provide safe equipment." *Id.* at 5 (quoting *Urie*, 337 U.S. at 188-89). In other words, the LIA allows the plaintiff to treat an LIA violation as negligence *per se* under the FELA. *Id.* While the plaintiff is relieved of the burden of establishing the defendant's negligence, the plaintiff retains the burden "to prove a causal relation between a violation and the injury for which he is suing." *Id.* (internal quotation marks omitted).

"'Causation under FELA . . . differs from a normal negligence case because if [an] employer's negligence is the slightest cause of the injury, liability is established.'" *Rice v. BNSF Ry. Co.*, 346 S.W.3d 360, 369 (Mo. App. S.D. 1011) (quoting *Euton v. Norfolk & W. Ry. Co.*, 936 S.W.2d 146, 151 (Mo. App. E.D. 1996)). In other words, "there only need be some evidence, ***even the slightest***, to connect [Host's] injuries to some negligent act of BNSF." *Id.* (emphasis added). Proof of causation generally requires expert testimony to establish the causal connection between the accident and the injury. *Payton*, 405 S.W.3d at 5. However, expert testimony is not necessary if "the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile." *Id.*

Host's petition alleged that he slipped and suffered injuries to his right ankle as a result of BNSF's failure to comply with regulations promulgated under the authority of the LIA. *See* 49 U.S.C. sections 20103, 20701. In particular, Host alleged his injuries

20

resulted from BNSF's violation of 49 C.F.R. section 229.119(c), which provides: "Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing."

Host negligence *per se* verdict director submitted causation disjunctively on two theories. Instruction 8 required the jury to enter a verdict in favor of Host if it believed:

First, either:

[BNSF] failed to keep its locomotive cab floors and passageways free from oil or water that created a slipping hazard, or

[BNSF] failed to properly treat the locomotive floor to provide secure footing, and

Second, this use resulted in whole or in part in injury to [Host].

Host bore the burden of supporting each disjunctive submission with the appropriate quantum of evidence. *See Herrington v. Medevac Med. Response, Inc.*, 438 S.W.3d 417, 421-22 (Mo. App. W.D. 2014) ("In order for disjunctive verdict directing instructions to be deemed appropriate, each alternative must be supported by substantial evidence."). In this FELA case, that quantum of evidence was "some evidence, even the slightest." *Rice*, 346 S.W.3d at 369.

BNSF alleges that "no evidence" supports either disjunctive submission. This assertion is plainly belied by the record. Host testified that on the night of his accident, his supervisor ordered him to report to the diesel shop facility where the locomotives were serviced. The trainmaster ordered Host and his coworker to move locomotives from

21

the diesel shop to the rail yard. At some point during that process, Host had to leave the cab of the locomotive. Host testified:

> At that point, I got up out of my seat. Walked over to the door. Opened the door with my left hand. Had my lantern in my right hand, shined it in front of me and didn't see any obvious defects or anything like that. Stepped out. Slipped. Missed the step and was on the platform.

Later in his testimony, Host said that his slip was "smooth" so he knew that he slipped on a slippery substance, such as grease, water, or oil. Host further clarified that his foot slipped on the threshold. When pressed on cross-examination as to whether he slipped on the first step or on the threshold, Host explained that he calls the threshold "the first step."

In addition to Host's testimony, the jury heard other BNSF employees testify about the condition of the locomotive. The locomotive had been in service for sixteen years at the time of Host's accident, and BNSF had placed the locomotive in the diesel shop facility for periodic maintenance immediately prior to Host's accident. As part of that periodic maintenance, the diesel shop employees used oil, grease, and other petroleum products and used the locomotive's walkways and stairs to enter the cab. Photographs admitted into evidence showed oil and grease on the engineer's side of the locomotive, the same side where Host slipped on the stairs. BNSF's safety rules require all oil and grease to be removed from locomotive walking areas before a locomotive is released to the crew. Yet BNSF's records did not indicate that the locomotive's walking surfaces had been treated with a solvent or degreaser prior to its release to Host. Host's disjunctive submission that a slippery substance on the stairs caused his injury is plainly supported

22

by some evidence. *See Rice*, 346 S.W.3d at 369 ("[T]here need only be some evidence, even the slightest, to connect [Host's] injuries to some negligent act of BNSF.").

With respect to the second disjunctive submission, the foreman of the diesel shop facility testified that the locomotive threshold was supposed to be painted with yellow nonslip paint. Photographs of the threshold plainly showed that the yellow paint on the threshold was worn, exposing slick metal. As we have already explained, Host testified he slipped on the threshold. Host's disjunctive submission that the lack of a non-slip treatment on the locomotive stairs caused his injury is supported by some evidence. *See id*.

It is true that Host is not certain whether he slipped on the threshold because of an oil or greasy substance, or because of the absence of non-slip treatment. But both possibilities are supported by some, even the slightest evidence, and both possibilities support the conclusion that BNSF violated the LIA. This case is thus not one involving speculation or conjecture taking the place of proof of causation, as BNSF alleges. Host met his burden to prove that he was injured because of BNSF violation of the LIA. We thus distinguish the case of *Przybylinski v. CSX Transp., Inc.*, 292 Fed. App'x 485 (6th Cir. 2008), relied on by BNSF in its Reply Brief. There, a plaintiff was held to have failed in her burden of proof of causation in a FELA case where she testified about three possible causes for her fall, two of which would not have supported her claim of defective maintenance, and thus the conclusion that she was "injured by an unsafe working condition." *Id*. at 489.

The trial court did not commit error in submitting Host's negligence *per se* theory to the jury or in denying BNSF's motions for directed verdict and JNOV. Point One is denied.

**Point Four**

In its fourth point on appeal, BNSF argues that the trial court erred in allowing Host to introduce evidence that BNSF cleaned up oil spots near the site of Host's fall because the evidence constituted inadmissible evidence of subsequent remedial measures to prove BNSF's negligence. We generously read BNSF's point relied on as applicable both to its claim of general negligence and negligence *per se*, though that is not at all clear from the point itself or from the argument developed in BNSF's Brief. In any case, because we are not persuaded that evidence of subsequent remedial measures was received into evidence at all, let alone to establish BNSF's negligence, BNSF's point is without merit.

A trial court has considerable discretion in admitting or excluding evidence at trial. *St. Louis Cnty. v. River Bend Estates Homeowners' Ass'n.*, 408 S.W.3d 116, 123 (Mo. banc 2013). We "give[] deference to the trial court's evidentiary rulings and will reverse the trial court's decision about the admission or exclusion of evidence only if the trial court clearly abused its discretion." *Id.* Even then, we "will reverse only if the prejudice resulting from the improper admission of evidence is outcome-determinative." *Williams v. Trans States Airlines, Inc.*, 281 S.W.3d 854, 872 (Mo. App. E.D. 2009).

Where evidence is admitted without objection, however, "'the party against whom it is offered waives any objection to the evidence, and it may be properly considered even

24

if the evidence would have been excluded upon a proper objection." *Reinert v. Dir. of Revenue*, 894 S.W.2d 162, 164 (Mo. banc 1995), *overruled on other grounds by White v. Dir. of Revenue*, 321 S.W.3d 298, 306-07 (Mo. banc 2012). "'[T]he objection must be specific, and the point raised on appeal must be based upon the same theory.'" *King v. City of Independence*, 64 S.W.3d 335, 341 (Mo. App. W.D. 2002) (quoting *State v. Vann*, 7 S.W.3d 407, 410 (Mo. App. W.D. 1999)), *overruled on other grounds by George Ward Builders, Inc. v. City of Lee's Summit*, 157 S.W.3d 644, 650-51 (Mo. App. W.D. 2004).

BNSF's point relied on complains about the admission of subsequent remedial measure evidence through "an inspection report and questions to witnesses about the inspection report." [Appellant's Brief p. 39] During Host's opening statement to the jury, Host's counsel began discussing the inspection BNSF was required to conduct after Host reported his injury. BNSF objected and requested a continuing objection ***to admission of BNSF's inspection report*** based on the subsequent remedial measures rule, consistent with motion *in limine* arguments made prior to trial. The trial court granted BNSF "a continuing objection ***to the admission of this document***, based on the motion *in limine* that has been previously ruled on by the court." [Tr. 442] (Emphasis added.) Thereafter, when Host moved during his case-in-chief to admit the inspection report (Exhibit 5), BNSF noted for the record its earlier objection *to the document* based on the subsequent remedial measures rule. [Tr. 623]

However, we are not persuaded that the inspection report reflects a subsequent remedial measure. The report identifies an 11" X 6" oil spot and a 6" X 5" oil spot, each located on the engineer's side of the locomotive where Host fell. The report, under a

25

section whose heading is illegible,[10] says "clean up oil spots."  In its Brief, BNSF refers to this passage as reading "clean[ed] up" oil spots though no witness ever testified that, at the time the report was prepared, the discovered oil spots had been cleaned.  In fact, the witness who laid foundation for the admission of Exhibit 5 testified that he did not prepare the report and had no knowledge about when or whether the oil spots where cleaned.  We do not find an abuse of discretion in admitting the inspection report as we are not persuaded that it reflects whether BNSF undertook a subsequent remedial measure.

In its Brief, BNSF cites to four other occasions where it contends the trial court erred in admitting evidence of subsequent remedial measures--each referring to witness testimony.  BNSF's continuing objection to discussion of subsequent remedial measures related exclusively to admission of the inspection report, Exhibit 5.  BNSF never sought or received a continuing objection relating to witness testimony addressing cleanup efforts.  BNSF was thus obligated to object when or as witnesses were asked to testify about such efforts.  *See R & J Rhodes, LLC v. Finney*, 231 S.W.3d 183, 190 (Mo. App. W.D. 2007) ("'To preserve for appellate review an error regarding the admission of evidence, a timely objection must be made when the evidence is introduced at trial.  If the objection is not made at the time of the incident giving rise to the objection, the objection may be deemed waived or abandoned.'" (quoting *Letz v. Turbomeca Engine Corp.*, 975 S.W.2d 155, 168 (Mo. App. W.D. 1997))).

---

[10]At different points in the transcript and legal file, the parties refer to this part of the report as calling for a description of "what repairs were made to the equipment."  We cannot verify that characterization, however, as the exhibit is illegible.  More to the point, the person who filled out the inspection report did not testify, leaving to speculation whether "clean up oil spots" referred to an action that was recommended or that had already been taken.

26

BNSF first cites to Host's testimony at Transcript 780-81. There, Host was asked on direct examination whether "a claim agent . . . [told him] that they had actually discovered oil in that area." BNSF objected on the basis of hearsay, which was overruled. Plainly, Host was not asked about the alleged clean up of oil spots. And in any case, BNSF did not object to the question asked of Host on the basis that it sought to admit evidence of subsequent remedial measures.

BNSF next cites to a question asked of Host on redirect examination. Host was asked "Then you saw the inspection report where the railroad did find and clean up the oil?" [Tr. 958] BNSF objected that the question had been asked and answered. It did not object that the question called for discussion of a subsequent remedial measure rule. In any event, BNSF's objection was sustained, meaning no evidence was admitted.

BNSF next cites to cross-examination of Wayne Davis, a locomotive electrician for BNSF at the time of Host's injury. [Tr. 1081-82; 1090-91] There is no inquiry of Davis on Transcript 1081-82 involving clean up of oil spots. And in any event, no objection of any kind was registered by BNSF to Davis's testimony at that point. At Transcript 1090-91, Davis was asked to verify that a photograph he was being shown was taken before any clean up of the area, and to verify that he did not do "the cleanup" and had no knowledge of when the cleanup occurred. Davis confirmed that the photograph showed oil spots and that he had no knowledge on the subject of cleanup of the spots. Though Host's question of Davis presupposed a cleanup, Davis testified he had no knowledge of that subject. Davis's testimony was not, therefore, evidence of a

27

subsequent remedial measure. And in any event, BNSF registered no objection to Host's question on that or any other basis.

BNSF fails to establish that subsequent remedial measures evidence was admitted through witness testimony or, if it was, that the evidence was admitted over timely and specific objection on that basis. Read in context, the witness testimony highlighted by BNSF appears to do nothing more than to establish that oil was found in the vicinity of Host's fall. It is uncontested that the LIA required BNSF to keep "[f]loors of cabs, passageways, and compartments . . . free from oil, water, waste or obstruction that creates as slipping . . . hazard." 49 C.F.R. section 229-119(c). It is also uncontested that if BNSF found oil in any of these places, it was required by the LIA to remediate the condition. Thus, even if the witness testimony relied on by BNSF could be construed to establish that BNSF cleaned up oil found after Host's injury, the evidence would be admissible to establish the existence of a condition BNSF was required by law to remediate. *See O'Dell v. Hercules, Inc.*, 904 F.2d 1194, 1204 (8th Cir. 1990) (holding that "subsequent remedial activities and recommendations . . . forced upon [a defendant] by superior governmental authority" are not excludable evidence "because the policy goal of encouraging remediation would not necessarily be furthered by exclusion of such evidence.").

Moreover, were we to conclude that the witness testimony relied on by BNSF constitute evidence of subsequent remedial measures as to which error was preserved by proper objection (which we do not), we would conclude that the evidence was not improperly admitted to establish BNSF's negligence. Evidence that oil spots were found

28

in the area that were either cleaned up, or required to be cleaned up, is directly responsive to BNSF's defense that no slippery condition existed, or could have existed, on the steps where Host fell. It is settled that "[e]vidence of subsequent repairs may be admissible . . . to show the condition of the accident site at the time of the fall." *Taylor v. Associated Elec. Coop., Inc.*, 818 S.W.2d 669, 672 (Mo. App. W.D. 1991). Such evidence may also be admissible to impeach. *Rust v. Hammons*, 929 S.W.2d 834, 837 (Mo. App. W.D. 1996). In fact, the evidence about which BNSF complains was referenced for precisely this purpose during closing argument where Host observed:

> There's a violation of this law that having slippery substances and not having secure footing with respect to the second claim that you'll see in your packets for negligence [*per se*]. . . . The fact that there was oil on the running board of this locomotive, which they admit--even though they deny, they say it's impossible for it to have gotten tracked up there [to the steps], except their own witness and evidence, that this mechanical shop didn't do any inspection or didn't do any clean-up of this locomotive after it had been in the shop, at least not until afterwards. At that point, that was too late for [Host].

Evidence of oil spots found near the steps where Host's injury occurred tended to negate or respond to BNSF's adamant defense that the steps were not, and could not have been, slippery. The evidence, even if characterized as subsequent remedial measure evidence, was not offered or admitted to establish that BNSF was negligent.[11]

---

[11]Host also argues that the subsequent remedial measures rule has no application to "strict liability" torts, and that because violation of the LIA imposes "strict liability" under the FELA, the subsequent remedial measures rule does not apply to FELA claims predicated on a theory of negligence *per se*. *See, e.g.*, *Emerson v. Garvin Grp., LLC*, 399 S.W.3d 42, 45-46 (Mo. App. E.D. 2013); *Pollard v. Ashby*, 793 S.W.2d 394, 402-03 (Mo. App. E.D. 1990) (both holding that the rule relating to subsequent remedial measures is not applicable in strict liability cases in Missouri). Because we otherwise find BNSF's point four to be without merit, we need not resolve whether the subsequent remedial measures rule applies to negligence *per se* FELA claims, though we do observe that the issue does not appear to be a settled one. *See, e.g.*, *Cowden v. BNSF Ry. Co.,* No. 4:08CV01534ERW, 2013 WL 5442926, **7-8 (E.D. Mo. Sept. 30, 2013) (holding that negligence *per se* FELA claim is not a true strict liability claim for purposes of evaluating admissibility of subsequent remedial measures).

Point Four is denied.[12]

## Point Five

In its fifth point on appeal, BNSF claims that it was error for the trial court to permit introduction of the text of 49 C.F.R. section 229.119(c) into evidence because the jury instructions provided the relevant law and the introduced text "allowed the jury to improperly supply additional negligence per se standards," creating potential confusion. [Appellant's Brief p. 43]  Our standard of review for the admission of evidence is the same as that described in connection with our discussion of BNSF's Point Four.

BNSF cites no authority for the proposition that it is error, as a matter of law, to admit a federal regulation into evidence, particularly where the regulation is directly relevant to establish the applicable standard of care.  In fact, settled law holds to the contrary.  *Giddens v. Kansas City S. Ry. Co.*, 29 S.W.3d 813, 821 (Mo. banc 2000) (holding that in a general negligence case, "[federal] regulations offered as evidence of the standard of care owed by a party are competent evidence relevant to the question of negligence"); *see also Ratcliff v. Sprint Mo., Inc.*, 261 S.W.3d 534, 550 (Mo. App. W.D. 2008); *Clark v. Mo. & N. Ark. R.R. Co., Inc.*, 157 S.W.3d 665, 673 (Mo. App. W.D. 2004).  Admissibility of a federal regulation is thus not *per se* prohibited but instead turns

---

[12]In the argument portion of its Brief, BNSF also complains that Host erroneously referenced the subsequent remedial measure evidence during his closing argument.  No error was claimed in BNSF's point relied on regarding the trial court's permitting of closing argument on this subject, preserving nothing for our review.  Rule 84.04(e); *Goudeaux*, 409 S.W.3d at 522 n.18 (holding that argument which exceeds the scope of a point relied on is not preserved for appellate review).  In addition, BNSF did not object to that portion of Host's closing argument about which it complains, preserving nothing for our review.  *Potter v. Kley*, 411 S.W.3d 388, 391-92 (Mo. App. E.D. 2013) (holding that failure to object during closing argument preserves no claim of error for appellate review).  To the extent BNSF's reference to Host's closing argument in its Brief is intended merely to highlight the prejudicial effect of the alleged erroneously admitted subsequent remedial measures evidence, our determination that the trial court did not err in admitting the referenced evidence moots the need to address its prejudicial effect.

on traditional principles of relevance. *Giddens*, 29 S.W.3d at 821 (holding that the proponent of a federal regulation must "present[] sufficient evidence of the relevance and applicability of the . . . regulations at issue to allow their admission").

Here, BNSF's violation of 49 C.F.R. section 229.119(c) formed the basis for Host's negligence *per se* theory. That subsection provides that "[f]loors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing."

"Negligence per se arises when the legislature pronounces in a statute what the conduct of a reasonable person must be and the court adopts the statutory standard of care to define the standard of conduct of a reasonable person." *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 84 (Mo. App. E.D. 2012). "In addition to legislative enactments, courts may adopt the requirements of municipal ordinances and administrative regulations 'as the standard of conduct necessary to avoid liability for negligence.'" *Id.* (quoting RESTATEMENT (SECOND) OF TORTS section 285 cmt. d (1965)). One of the essential elements of a claim of negligence *per se* is proof that a defendant "violated a statute or regulation." *Id.* It is difficult to conceive how a plaintiff can sustain his or her burden to prove a negligence *per se* claim without offering into evidence the text of the statute or regulation on which the claim is premised.[13]

---

[13]Like statutes, "[r]ules and regulations of a federal agency promulgated pursuant to Congressional authority have the force and effect of law and courts of this state will judicially notice them." *Ins. Co. of State of Pa. v. W. Plains Air, Inc.*, 637 S.W.2d 444, 446 (Mo. App. S.D. 1982). Thus, no further foundation need be laid for admission of a federal regulation into evidence.

Assuming the relevance of a federal regulation is established, as is the case here, the extent to which the regulation is brought to a jury's attention is a matter of trial court discretion. Plainly, it is not error to permit relevant federal regulations to be read into evidence. *Giddens*, 29 S.W.3d at 821 ("A trial court may permit rules of this type to be read into evidence. . . ."). There is also authority for the proposition that a copy of the statute or regulation can be admitted into evidence as an exhibit. *See, e.g.*, *Kline v. City of Kansas City*, 334 S.W.3d 632, 645 (Mo. App. W.D. 2011) (noting plaintiff's argument that statutes should have been admitted into evidence because she had standing to sue for their violation but rejecting the argument because the plaintiff "*did not allege such claims as a basis for recovery as part of her lawsuit*"); *Ratcliff*, 261 S.W.3d at 550 ("Rules and regulations . . . may be entered into evidence and a violation of the substance of the pertinent rule 'may be hypothesized as evidence supporting a jury finding of negligence.'" (quoting *Giddens*, 29 S.W.3d at 821)).

Here, the trial court admitted a copy of the 49 C.F.R. section 229.119 into evidence and permitted the exhibit to be viewed by the jury during its deliberations. BNSF cites no authority for the proposition that this was an abuse of the trial court's discretion. BNSF does cite several cases for the general proposition that a statute should not be read or provided to a jury because the jury is to obtain the law only from approved jury instructions. *Lasky v. Union Elec. Co.*, 936 S.W.2d 797, 802 (Mo. banc 1997); *Kline*, 334 S.W.3d at 645; *Eckelkamp v. Burlington N. Santa Fe Ry. Co.*, 298 S.W.3d 546, 550 (Mo. App. E.D. 2009). However, as noted, this general principle is subject to

exception where the text of a regulation or statute is relevant to establish the applicable standard of care.

BNSF alternatively argues that it was error to admit the entirety of 49 C.F.R. section 229.119 into evidence because the jury was thus exposed to regulatory standards that were not the subject of Host's negligence *per se* claim. 49 C.F.R. section 229.119 contains nine subsections, (a) through (i), each of which addresses a discrete regulatory standard. The only subsection relied on by Host was subsection (c) addressing the condition of floors of cabs, passageways and compartments. Subsections (a), (b), and (d) through (i) were not logically relevant, as they did not tend to make the existence of a fact of consequence to determination of Host's FELA claim more or less probable than it would have been without the evidence. *See Pittman v. Ripley Cnty. Mem'l Hosp.*, 318 S.W.3d 289, 294 (Mo. App. S.D. 2010) (describing concept of logical relevance). The extraneous subsections of 49 C.F.R. section 229.119 should not have been admitted in evidence.

However, we do not reverse for error in the admission of evidence unless the error is outcome determinative. *Williams*, 281 S.W.3d at 872. BNSF claims that the admission of eight regulatory standards that were not relied on by Host to claim a violation of the LIA created prejudicial juror confusion because the jury was permitted to consider standards were not pled. Beyond this bare assertion, BNSF does not develop or explain its argument.

We disagree with BNSF's undeveloped assertion. The subsections of 49 C.F.R. section 229.119 that should not have been admitted into evidence address, respectively,

33

cab seats (subsection (a)); cab windows (subsection (b)); ventilation (subsection (d)); passage from locomotive to locomotive (subsection (e)); containers (subsection (f)); air conditioning requirements (subsections (g) and (h)); and door securing devices (subsection (i)). None of these standards were implicated as the cause of Host's injury. The verdict director for Host's negligence *per se* claim unambiguously limited the jury's attention to the condition of the floors in the locomotive. Under the circumstances, we cannot see how the erroneous admission of the extraneous portions of 49 C.F.R. section 229.119 would have confused the jury or prejudiced BNSF. BNSF articulates no reasoned argument to the contrary.

This case is thus readily distinguishable from *Eckelkamp*. There, the trial court permitted the display, reading, and debate of a statute addressing a driver's duty at a railroad crossing. 298 S.W.3d at 549. The admitted text of the statute also included reference to the fact that violation of the statute constitutes a class C misdemeanor. *Id.* at 553. The Eastern District observed that the admitted statute "not only contained the motorist's duty, but also a state criminal penalty for breaching that duty." *Id.* The court observed that the "criminal penalty was not a part of this negligence" case and was thus irrelevant. *Id.* The court also found that "[i]ndication that a defendant in a civil negligence case violated a criminal statute while breaching his duty of care is highly prejudicial." *Id.* Here, though the extraneous regulations described in 49 C.F.R. section 229.119 were irrelevant, they were not inflammatory by their nature and had no possible bearing on BNSF's culpability for violation of subsection (c) of the regulation. The

irrelevant portions of 49 C.F.R. section 229.119 were not highly prejudicial or outcome determinative.

Point Five on appeal is denied.

### Remaining Points on Appeal

Because no prejudicial error was committed in connection with either the trial or submission of Host's negligence *per se* theory, the trial court's judgment in the amount of the negligence *per se* verdict is affirmed. We need not address BNSF's points on appeal which relate solely to Host's general negligence theory as any error committed as claimed in those points is moot. Thus, Points Three, Six (b), and Six (c) are denied without further discussion.

### Conclusion

The trial court's judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge


All concur