

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| GARY MILLER, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | WD82088 |
| | ) | |
| NORFOLK SOUTHERN RAILWAY | ) | Opinion filed: October 8, 2019 |
| COMPANY, | ) | |
| | ) | |
| Respondent. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF CLAY COUNTY, MISSOURI**
**THE HONORABLE JANET L. SUTTON, JUDGE**

Before Division Three: Gary D. Witt, Presiding Judge,
Edward R. Ardini, Jr., Judge and Thomas N. Chapman, Judge

Gary Miller ("Miller") appeals from a judgment entered in favor of Norfolk Southern

Railway Company ("Norfolk") following a jury trial on Miller's claim for damages under the

Federal Employers' Liability Act ("FELA").[1] Miller, a former locomotive engineer employed by

Norfolk, alleged that Norfolk was negligent for providing "loose and wobbly" locomotive cab

seats that failed to protect him from excessive shock, jarring, and vibration, and that this negligence

caused him to suffer significant back injuries. The jury was instructed on two theories of recovery

---

[1] 45 U.S.C. § 51 *et seq.*

for Miller under the FELA: general negligence and negligence *per se* for violation of the Locomotive Inspection Act ("LIA").[2] The jury found in favor of Norfolk on both theories.

Miller raises three points on appeal, each asserting instructional error. Specifically, Miller argues that the trial court erred by: (1) refusing his proffered verdict director relating to his negligence *per se* theory and submitting on an instruction that did not properly state the law applicable to the claim; (2) refusing his proffered assumption of the risk withdrawal instruction; and (3) submitting an improper contributory negligence instruction to the jury. Finding the trial court's refusal to give Miller's proffered verdict director on his negligence *per se* theory was error, we vacate the entry of judgment in favor of Norfolk on that claim and remand for a new trial on that theory of recovery.

**Factual and Procedural Background**

Miller was hired by Norfolk in March 1993 as a switchman. Three years later, he began working as a locomotive engineer[3] in Norfolk's North Kansas City/Claycomo yards.

Miller started experiencing significant back pain in 2014. He underwent spinal surgery in August 2014, and was cleared by his doctor to return to work on January 23, 2015, at which time he resumed his previous duties as a locomotive engineer. By November 2015, Miller was again experiencing back pain. He received epidural injections that failed to provide relief, and ultimately underwent a second spinal surgery performed in December 2016. Following that surgery, Miller's doctor placed him on restrictions that prevented him from returning to work as a locomotive engineer. Miller was approximately 51 years old.

---

[2] 49 U.S.C. § 20701 *et seq.*

[3] A locomotive engineer operates the engine of the locomotive.

2

Miller filed suit against Norfolk on November 17, 2014. Miller's petition asserted one negligence count under the FELA, through which he sought recovery under two theories: (1) general negligence and (2) negligence *per se* based on Norfolk's violation of the LIA. Miller alleged that Norfolk failed to provide him reasonably safe locomotive cab seats and that such conduct was "in violation of the [LIA], as [Norfolk] failed to provide [him] with locomotives that did not pose an unnecessary danger of personal injury and was and is in violation of . . . 49 C.F.R. § 229.119 constituting negligence per se."

At trial, Miller testified that as an engineer, he spent 80 percent of his day seated in a locomotive. The seats were mounted to the locomotive with steel poles, and did not use suspension, shock absorbers, or springs to dampen the vibrations that inherently occurred in locomotive cabs. Miller stated that "there was always vibration" in the cab when the engine was running, and the seats were "constantly shaking with vibration."

Miller further testified that there were "quite a few" seats in the locomotive cabs that were "loose and wobbly," and that he encountered such seats 25 to 30 percent of the time. Other witnesses confirmed that loose seats had existed in the locomotive cabs, although to a lesser extent than testified to by Miller.

Miller presented the testimony of two experts. Dr. Johanning, an occupational medical physician, testified that Miller's exposure to shock, jarring, and vibration while operating locomotives caused or directly contributed to his back injuries. Dr. Johanning also opined that riding on loose and wobbly seats 25 to 30 percent of the time would have caused or directly contributed to Miller's back injuries. Dr. Kress, a biomechanical and biomedical engineer, testified that by riding in seats without protection from shock and vibration over the course of his career, Miller was exposed to risk factors for the development of spinal degeneration.

3

The evidence further established that Norfolk had a safety rule that required employees to report unsafe or defective equipment; Miller acknowledged the rule and confirmed that he had never reported a defective, unsafe, or loose or wobbly seat.

Norfolk offered testimony from Dennis Mitchell, a certified professional ergonomist, who tested the locomotives in Norfolk's North Kansas City rail yard. This testing included participating in a "run" that was representative of Miller's regular work. Mitchell testified that the ride quality of the locomotive was reasonably safe and that Miller was provided with "a reasonably safe [work] environment from an ergonomic and ride quality standpoint." Additionally, Dr. MacMillan, an orthopedic surgeon who conducted an independent medical evaluation of Miller, offered his opinion that Miller's back condition was caused by "age- and obesity-related facet arthropathy, facet syndrome, spinal stenosis." Dr. MacMillan did not believe that Miller's back condition was attributable to exposure to vibrations while employed by Norfolk.

The trial court instructed the jury on Miller's two theories of recovery: general negligence and negligence *per se* premised on Norfolk's violation of the LIA. The jury additionally received a contributory negligence instruction relating to Miller's general negligence theory of recovery. The jury found in favor of Norfolk on both theories, and the trial court entered judgment in Norfolk's favor.

Miller appeals. Additional facts are discussed as necessary.

**The FELA and the LIA**

Prior to addressing the substance of Miller's points on appeal, we will discuss the law governing his claims.[4] The FELA imposes liability on railroads for their employees' injuries

---

[4] Although "FELA provides for concurrent jurisdiction of the state and federal courts," "substantively FELA actions are governed by federal law." *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165 (2007).

4

caused "in whole or in part from the negligence of the railroad or its employees." *Host v. BNSF Ry. Co.*, 460 S.W.3d 87, 104 (Mo. App. W.D. 2015) (internal marks omitted). The FELA provides that:

> Every common carrier by railroad . . . shall be liable in damages to any person suffering injury while he is employed by such carrier . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery . . . or other equipment.

45 U.S.C. § 51.

"The LIA supplements FELA by imposing on interstate railroads an absolute and continuing duty to provide safe equipment." *Host*, 460 S.W.3d at 104 (internal marks omitted). The LIA provides that a "railroad carrier may use or allow to be used a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances":

> (1) are in proper condition and safe to operate without unnecessary danger of personal injury;
>
> (2) have been inspected as required under this chapter and regulations prescribed by the Secretary of Transportation under this chapter; and
>
> (3) can withstand every test prescribed by the Secretary under this chapter.

49 U.S.C. § 20701.[5] "Pursuant to the LIA, the Federal Railroad Administration ['FRA'], which acts under the authority of the Secretary of Transportation, has promulgated regulations on the governing standards of care for locomotive equipment, including seats." *Delaware & Hudson Ry. Co., Inc. v. Knoedler Mfrs., Inc.*, 781 F.3d 656, 658-59 (3d Cir. 2015) (internal citations omitted). The regulation relevant to this appeal is found at 49 C.F.R. § 229.119(a), and provides that all locomotive cab seats "shall be securely mounted and braced."

---

[5] The LIA was originally known as the Boiler Inspection Act ("BIA"), *Kurns v. A.W. Chesterton Inc.*, 620 F.3d 392, 396 n.3 (3d Cir. 2010), and is referred to as such in some of the case law cited in this opinion. "We simply note that this is a distinction without a difference, and both terms [(the LIA and the BIA)] refer to 49 U.S.C. § 20701, *et seq.*" *Id.*

"Violations of the [FRA's] rules are violations of the [LIA.]" *Urie v. Thompson*, 337 U.S. 163, 191 (1949). "While the LIA and its regulations provide binding standards for the suppliers of locomotives and locomotive equipment, as well as for railroad companies, the statute does not provide a private right of action to employees injured by defective equipment." *Delaware & Hudson Ry. Co.*, 781 F.3d at 659 (internal citations omitted). Rather, the LIA "allows a plaintiff to treat a proven LIA violation as negligence per se in an action under FELA." *Host*, 460 S.W.3d at 97. While a plaintiff seeking recovery for a violation of the LIA "is relieved of the burden of establishing the defendant's negligence, the plaintiff retains the burden to prove a causal relation between a violation and the injury for which he is suing." *Id.* at 104 (internal marks omitted). A plaintiff need not elect to bring his FELA claim under either a general negligence or negligence *per se* theory; rather, "a claim under the FELA can be asserted based both on a theory of general negligence and on a theory of negligence *per se* because of a violation of the LIA." *Id.* at 97 (citing *Urie*, 337 U.S. at 189).

A railroad may assert contributory negligence as a defense to a plaintiff's claim for general negligence under the FELA. *See id.* at 98. If the jury finds that the plaintiff's negligence contributed to his injury, "the damages shall be diminished by the jury in proportion to the amount of negligence attributable to [the plaintiff.]" 45 U.S.C. § 53. However, the railroad cannot assert contributory negligence as a defense against a claim that the railroad committed negligence *per se* by violating the LIA. *See id.* (No employee "shall be held to have been guilty of contributory negligence in any case where the violation by [the railroad] of any statute enacted for the safety of employees contributed to the injury or death of such employee."); *see also Lilly v. Grand Trunk W. R.R. Co.*, 317 U.S. 481, 491 (1943) ("Since petitioner's injuries were the result of respondent's violation of the [LIA], the partial defense of contributory negligence . . . [is] not available[.]").

Congress amended the FELA in 1939 to eliminate the defense of assumption of risk. *See Tiller v. Atl. Coast Line R.R. Co.*, 318 U.S. 54, 58 (1943); *see also* 45 U.S.C. § 54 (In an employee's action under the FELA, the "employee shall not be held to have assumed the risks of his employment in any case where such injury or death resulted in whole or in part from the negligence" of the railroad.). Thus, "case[s] tried under the [FELA] [are] to be handled as though no doctrine of assumption of risk had ever existed." *Tiller*, 318 U.S. 64.

With this law in mind, we turn to Miller's claims of instructional error.

## Point I

Miller's first point on appeal asserts error relating to the verdict director applicable to his negligence *per se* theory. Miller contends that Instruction 10[6] submitted his negligence *per se* theory under 49 U.S.C. § 20701(1) by requiring him to establish that Norfolk breached its duty to keep all parts and appurtenances in proper condition and safe to operate without unnecessary danger of personal injury. Miller argues that the giving of Instruction 10 was improper because his negligence *per se* claim was not based on that statutory subsection or the standard contained in the instruction, but instead was founded on Norfolk's violation of 49 U.S.C. § 20701(3) for its failure to comply with 49 C.F.R. § 229.119(a). Miller asserts that the trial court erred in refusing his proffered Instruction B[7], and instead giving Instruction 10, explaining "that Instruction B properly

---

[6] Instruction 10 provided:

> On Plaintiff's claim for violation of the Locomotive Inspection Act against Defendant, your verdict must be for Plaintiff if you believe:
>
> First, locomotives were not in proper condition and not safe to operate without unnecessary danger of personal injury, and
>
> Second, this condition resulted in whole or in part in injury to Plaintiff.

[7] Instruction B provided:

> Your verdict must be for plaintiff on his FRA regulation claim if you believe:

7

stated the federal substantive law applicable to [his] claim" and that his "claim was therefore not submitted under his chosen theory, which was supported by the evidence." We agree.

*Preservation*

We first address Norfolk's contention that this point of error was not properly preserved for our review. To preserve a claim of instructional error, a party must object "on the record during the instructions conference, stating distinctly the matter objected to and the grounds of the objection" and must also raise the objection in a motion for new trial. Rule 70.03. At the conclusion of Miller's presentation of evidence, Miller's counsel advised that it was Miller's intention to submit to the jury his negligence *per se* theory based on Norfolk's failure to comply with 49 C.F.R. § 229.119 and not "submit on the general LIA language" found in 49 U.S.C. § 20701(1). The trial court later conducted an off-the-record instructions conference that was followed by the trial court, on the record, reading in sequence the instructions it intended to give to the jury. After the trial court finished reading the instructions, Miller's counsel offered Instruction B and argued that it should be submitted instead of Instruction 10:

> Miller's counsel: Last but not least, Your Honor, Plaintiff would offer Instruction B, which is a regulation - - the alternative to the MAI form submitted Locomotive Inspection Act.
>     I know Your Honor's using the Locomotive Inspection Act straight out of MAI, and I understand why you are, Your Honor.[8] We believe that Instruction B would be proper. It's a regulation submission, would be a proper statement of the law, and should be used because under the Locomotive Inspection Act, the violation of the regulation is, in and of itself, liability.

---

First, defendant failed to comply with the following:

a) 49 CFR 219.119 [sic] which provides that locomotive seats shall be securely mounted and braced.

Second, such failure resulted in whole or in part in injury to plaintiff.

[8] As will be discussed in further detail below, the Missouri Approved Instruction ("MAI") for an FELA claim based on an LIA violation only tracks the language in 49 U.S.C. § 20701(1), namely that a railroad has a duty to keep all parts and appurtenances in "proper condition and safe to operate without unnecessary danger of personal injury." *See* MAI 24.02 [2016 Revision]. The MAIs do not provide a pattern instruction for when a plaintiff asserts the railroad violated the LIA by failing to comply with an applicable regulation under 49 U.S.C. § 20701(3).

8

The Court: I'll show it's marked as B and refused for the record.

The aforementioned confirms that Miller timely objected on the record at the instructions conference to the giving of Instruction 10 over his proffered Instruction B. Miller renewed this objection in his motion for new trial. Thus, we find Miller properly preserved this claim of instructional error for our review. *See* Rule 70.03.

*Standard of Review*

"The trial court's refusal to give a party's proffered instruction is reviewed *de novo*, evaluating whether the instructions were supported by the evidence and the law." *Cluck v. Union Pac. R.R. Co.*, 367 S.W.3d 25, 32 (Mo. banc 2012) (citing *Marion v. Marcus*, 199 S.W.3d 887, 893 (Mo. App. W.D. 2006)). If we find instructional error, we reverse "only if such an error results in prejudice and materially affected the merits of the action." *Id.*

*Analysis*

It is well-settled that a railroad "can violate [the] LIA *either* by: (1) breaching the broad statutory duty to keep all parts and appurtenances of its locomotives in proper condition and safe to operate without unnecessary danger of personal injury (the general statutory duty) *or* (2) failing to comply with regulations issued by the FRA (a specific regulatory duty)."[9] *Straub v. BSNF Ry. Co.*, 909 F.3d 1280, 1284 (10th Cir. 2018) (emphasis added); *see also McGinn v. Burlington N. R.R. Co.*, 102 F.3d 295, 299 (7th Cir. 1996); *Mosco v. Baltimore & Ohio R.R.*, 817 F.2d 1088, 1091 (4th Cir. 1987); *Satterlee v. St. Louis-San Fran. Ry. Co.*, 82 S.W.2d 69, 74 (Mo. 1935).

Instruction 10 submitted negligence *per se* on the theory that Norfolk breached the general statutory duty found subsection 1. Proving such a violation requires a plaintiff to establish: (1) the

---

[9] The LIA's "general statutory duty" refers to the standard found in subsection 1 of 49 U.S.C. § 20701. The LIA also requires a railroad comply with "specific regulatory duties" under subsection 3 of 49 U.S.C. § 20701. Throughout this opinion we refer to "subsection 1" and "subsection 3" without additional reference to 49 U.S.C. § 20701.

9

railroad failed to keep its locomotive parts and appurtenances in proper condition and safe to operate without unnecessary danger of personal injury and (2) such failure resulted in whole or in part in injury to the plaintiff. MAI 24.02. By contrast, a claim of negligence *per se* based on subsection 3, which Miller elected to submit to the jury, requires proof that: (1) the railroad failed to comply with a regulation issued by the FRA and (2) such failure resulted in whole or in part in injury to the plaintiff. *See Payton v. Union Pac. R.R. Co.*, 405 S.W.3d 1, 6 (Mo. App. E.D. 2013) ("Because plaintiff sought damages for a violation of 49 C.F.R. § 229.119(a), requiring seats to be 'securely mounted or braced,' plaintiff was required to show that the failure to ensure that the seats were 'securely mounted or braced' was a cause of his injury.").

As the aforementioned reveals, the distinction between electing to proceed under a theory that a railroad violated a specific regulatory duty as opposed to the general statutory duty is substantively significant because under the latter theory, a plaintiff bears a heavier burden. A violation of the LIA's general statutory duty requires a plaintiff establish that the locomotive part at issue was not "safe to operate without unnecessary danger of personal injury." Importantly, such proof is not required when a railroad is alleged to have violated a specific regulatory duty because regulations "promulgated [by the FRA] under the [L]IA must be supported by a finding that the [regulation] is necessary to remove unnecessary peril to life or limb." *Gregory v. Mo. Pac. R.R. Co.*, 32 F.3d 160, 165 (5th Cir. 1994) (internal marks omitted); *see also Lilly*, 317 U.S. at 486. In other words, through promulgation of the regulation, the FRA has already determined that its violation would pose an "unnecessary danger of personal injury" rendering it unnecessary for the plaintiff to make such a showing to the jury.

In light of the above-discussed differences, it was error for the trial court to instruct the jury on the LIA's general statutory duty when Miller's theory of negligence *per se* was based on

10

Norfolk's violation of a specific regulation under subsection 3. *See Satterlee*, 82 S.W.2d at 73 (where the plaintiff's theory is that the railroad violated a specific regulation, the jury should be instructed on the specific standard set forth in the regulation, and an instruction on the LIA's general statutory duty standard does not sufficiently submit the plaintiff's theory of negligence *per se* to the jury).

In reaching this conclusion, we recognize that the Missouri Approved Instruction for FELA claims based on a negligence *per se* theory only contemplates violations of the LIA's general statutory duty, not specific regulations. *See* MAI 24.02. Understandably, this appears to have been the basis for the trial court's refusal of Instruction B. However, when a plaintiff asserts an FELA claim, the propriety of jury instructions concerning the substantive law is "a federal question." *St. Louis Sw. Ry. Co. v. Dickerson*, 470 U.S. 409, 411 (1985). As described above, federal law—and Missouri law—permits Miller to establish an LIA violation by showing that the railroad failed to comply with a specific regulatory duty.[10] *See, e.g.*, *Straub*, 909 F.3d at 1284; *Satterlee*, 82 S.W.2d at 73-74. Thus, the lack of MAI for an LIA violation based on a specific regulatory duty did not bar Miller from submitting this theory to the jury or obviate the trial court's duty to accurately instruct the jury on the applicable standards. *See Dickerson*, 470 U.S. at 410-11 (reversing the trial court's refusal to give an instruction on present value in an FELA case, noting that the "petitioner's contention that it was entitled to a jury instruction on present value cannot be dismissed on the

---

[10] We note that the Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit (2019) contains two pattern FELA instructions for a plaintiff seeking to prove negligence *per se*: one for the railroad's violation of the broad statutory duty stated in 49 U.S.C. § 20701(1) and another for the railroad's violation of an FRA regulation. *Compare* 8th Cir. Civil Jury Instr. § 15.41 Elements of Claim: Locomotive Inspection Act Violation, *with* 8th Cir. Civil Jury Instr. § 15.43 Elements of Claim: Violation of Regulation Enacted for the Safety of Railroad Employees; *see also* § 15.41 Note on Use 5 ("If the plaintiff's case is based on a violation of [an FRA] regulation, Model Instruction 15.43 should be used.").

ground that such an instruction is not to be found in the Missouri Approved Instructions."); *see also Kauzlarich v. Atchison, Topeka, & Santa Fe Ry. Co.*, 910 S.W.2d 254, 258 (Mo. banc 1995).

Having determined it was error for the trial court to submit Instruction 10 to the jury, we next examine whether the trial court should have instead given Miller's proffered Instruction B. A review of Instruction B reveals that it accurately stated the substantive law,[11] could be readily understood by the jury, and was supported by the evidence. *See Kauzlarich*, 910 S.W.2d at 260 ("When no instruction can be found in MAI, an appropriate instruction not in MAI must follow the substantive law and be written so that it can be readily understood by a jury composed of ordinary people.").[12] As a result, the trial court erred by refusing to give Instruction B.[13] *See Cluck*, 367 S.W.3d at 33 ("[A] party is entitled to an instruction on any theory supported by the evidence.").

---

[11] Counsel for Norfolk conceded at oral argument that Miller's proffered Instruction B accurately reflected the substantive law.

[12] For example, in *Host v. BNSF Railway Co.*, 460 S.W.3d 87, 104 (Mo. App. W.D. 2015), the plaintiff's theory was the railroad committed negligence *per se* by violating 49 C.F.R. § 229.119(c), which provides that "Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard" and "[f]loors shall be properly treated to provide secure footing." The verdict director submitted to the jury "required the jury to enter a verdict in favor of Host if it believed:"

> First, either:
>
> [The railroad] failed to keep its locomotive cab floors and passageways free from oil or water that created a slipping hazard, or
>
> [The railroad] failed to properly treat the locomotive floor to provide secure footing, and
>
> Second, this use resulted in whole or in part in injury to [Host].

*Id.* at 104-05. Although, the verdict director what not challenged on appeal, *Host* illustrates the practice we endorse here: instructing the jury on the standard set forth in the regulation when the plaintiff's theory is that the railroad violated a specific regulatory duty.

[13] Although Instruction B contained a typographical error in the citation to 49 C.F.R. § 229.119, the standard in the instruction tracked the wording of the regulation, therefore the error did not render the instruction improper.

A finding of instructional error does not end our analysis, however, because we will only reverse if the error resulted in prejudice. As discussed above, Miller was entitled to submit his negligence *per se* claim based on Norfolk's violation of 49 C.F.R. § 229.119(a) and we are persuaded that Miller was prejudiced by the trial court's failure to instruct on this theory of recovery. *See Satterlee*, 82 S.W.2d at 74 (although a plaintiff may proceed under subsection 1 or subsection 3 to show negligence *per se*, a plaintiff's ability to proceed under subsection 3 is "paramount."); *see also Ploch v. Hamai*, 213 S.W.3d 135, 142 (Mo. App. E.D. 2006) (the plaintiff was prejudiced by the trial court's refusal to submit the proffered instruction "by not allowing the jury to consider [the defendant's] potential liability on an issue sufficiently presented at trial"). Although Norfolk contends that Miller did not suffer prejudice because 49 C.F.R. § 229.119 was admitted into evidence at trial and Miller's counsel was able to argue in closing that Norfolk violated the regulation, we disagree that such evidence and argument was sufficient to cure the prejudice resulting from the use of Instruction 10 which substantively deviated from the elements required under Miller's theory of recovery and, in fact, heightened his burden of proof. *See Agri Process Innovations, Inc. v. Envirotrol, Inc.*, 338 S.W.3d 381, 389 (Mo. App. W.D. 2011) ("Argument by counsel is no substitute for proper direction from the trial court."). Accordingly, we find Miller was prejudiced by the trial court's error.

*Conclusion as to Point I*

Because the trial court's use of Instruction 10 to submit negligence *per se* to the jury was error and prejudice resulted that materially affected the merits of the action, we vacate the entry of judgment in Norfolk's favor on the negligence *per se* claim and remand for a new trial on that theory of recovery. Point I is granted.

13

**Point II**

In Point II, Miller argues that the trial court erred in refusing his proffered Instruction A, which would have removed from the jury's consideration any evidence that Miller assumed the risks of his employment.[14] Miller asserts that Norfolk improperly injected the "abolished doctrine" of assumption of risk into the case, and thus the trial court's failure to give a withdrawal instruction allowed the jurors to consider improper evidence and argument in reaching its verdict. We disagree.

*Standard of Review*

"A trial court's refusal of a withdrawal instruction will not be reversed absent an abuse of discretion." *Wilson v. P.B. Patel, M.D., P.C.*, 517 S.W.3d 520, 523 (Mo. banc 2017). "A trial court abuses its discretion when a ruling is clearly against the logic of the circumstances then before the trial court and is so unreasonable and arbitrary that the ruling shocks the sense of justice and indicates a lack of careful deliberate consideration." *Id.* (internal marks omitted).

*Analysis*

Miller argues that Norfolk injected the issue of assumption of risk into the case and directs us to several specific parts of the trial record. These examples fall into broad categories relating to Miller's failure to report defective seats in violation of Norfolk's safety rules, safety being a "two-way street," and Norfolk providing Miller a reasonably safe place to work. We disagree that such evidence and argument injected the issue of assumption of risk.

Assumption of risk versus contributory negligence

---

[14] Instruction A, which was patterned after MAI 24.05 [2012 Revision], provided:

Plaintiff does not assume any of the risks of his employment. This matter is withdrawn from the case and you are not to consider such evidence in arriving at your verdict.

14

Although Congress amended the FELA to eliminate the defense of assumption of risk, contributory negligence remains a viable defense to an FELA general negligence claim.[15] *See Fashauer v. New Jersey Transit Rail Operations*, 57 F.3d 1269, 1274 (3d Cir. 1995). Thus, "because contributory negligence on the plaintiff's part reduces his or her damages, while assumption of risk does not, courts have the delicate job of separating out evidence on one theory from evidence on the other." *Id.* "[I]f no evidence of impermissible assumption of risk has reached the jury, a correct instruction on contributory negligence will do." *Id.* at 1280; *see also* MAI 24.05 Notes on Use ("This instruction [withdrawing the 'matter' of assumption of risk from the jury] may only be given if the false issue of assumption of the risk is injected in the case.").[16]

In determining whether the issue of assumption of risk has been injected into the case, we are guided by the principle that "an employee's voluntary, knowledgeable acceptance of a dangerous condition that is necessary for him to perform his duties constitutes an assumption of risk." *Fashauer*, 57 F.3d at 1275. "[A]ssumption of risk in the employment context describe[s] the notion of implied consent—when an employee takes a job, he or she consents to assume the risk of any danger he or she knows or should know necessarily is entailed in the job." *Id.* at 1277.

"Contributory negligence, in contrast, is a careless act or omission on the plaintiff's part tending to add new dangers to conditions that the employer negligently created or permitted to exist." *Id.* at 1275. "Contributory negligence involves the notion of some fault or breach of duty on the part of the employee." *Id.* at 1277.

---

[15] However, contributory negligence is no defense to a claim the railroad committed negligence *per se* by violating the LIA. *See* 45 U.S.C. § 53; *Lilly*, 317 U.S. at 491. We emphasize this because our remand is limited to a retrial on the negligence *per se* theory only.

[16] *See also* MAI 34.01(A) [2012 Revision] ("A withdrawal instruction is only to be given when during the course of the trial a false issue, improper evidence, or evidence of an abandoned issue has been injected.").

15

Assimilating the above, "[a] plaintiff's recovery under the FELA never can be reduced on the basis that he or she implicitly consented to the risk by accepting employment with the railroad or by performing a task in a manner which the employer directed." *Id.* at 1280. "But all other actions of plaintiff are to be handled as though no doctrine of assumption of risk ever existed, and if they are evidence of negligence they should be admitted to show contributory negligence." *Id.* (internal marks and citation omitted). "Thus, when reasonable alternatives besides quitting or refusing to perform the task in an unsafe way are available, a plaintiff is charged with acting with due care and will be held responsible for acting unreasonably." *Id.*

"Examples of evidence of contributory negligence include failing to follow specific safety instructions reasonably calculated to protect the employee from the injury that occurred; failing to report a defect when the evidence establishes that such reporting would be productive; and failing to act prudently in performing the task." *Id.*

Application

Applying these principles, the evidence and argument cited by Miller did not inject issues of assumption of the risk into the trial, but rather was evidence relevant to establishing contributory negligence by Miller. For example, evidence that Miller violated Norfolk's safety rules by failing to report defective locomotive seats was, in the context of this case, relevant to the jury's evaluation of Miller's contributory negligence. *See Fashauer*, 57 F.3d at 1280 ("Examples of evidence of contributory negligence include failing to follow specific safety instructions reasonably calculated to protect the employee from the injury that occurred [and] failing to report a defect when the evidence establishes that such reporting would be productive[.]"). Similarly, evidence elicited by Norfolk that safety was a "two-way street" was proper to illustrate that Miller had a duty to act with due care and to argue that Miller breached that duty by failing to act prudently in performing

his job. *See id.* (evidence of contributory negligence includes evidence that the plaintiff failed to act prudently in performing a task). Finally, evidence that Norfolk gave Miller a reasonably safe place to work did not impermissibly inject the issue of assumption of risk. Rather, such evidence was relevant to rebut Miller's general negligence claim, under which Miller was required to prove that Norfolk "failed to provide reasonably safe conditions for work."

Upon a review of the record, we find the trial court did not abuse its discretion by refusing Miller's proffered withdrawal instruction concerning the issue of assumption of risk. *See Rowe v. Norfolk & W. Ry. Co.*, 787 S.W.2d 751, 755 (Mo. App. E.D. 1990) (the trial court did not abuse its discretion by failing to give an instruction withdrawing assumption of risk where the defendant did not raise the issue).

*Conclusion as to Point II*

Because Norfolk did not inject the issue of assumption of risk into the trial, the trial court did not abuse its discretion in refusing Instruction A. Point II is denied.

**Point III**

In Point III, Miller argues that the "trial court erred in giving Instruction 9 submitting Plaintiff's comparative fault, because the instruction injected the abolished defense of assumption of risk, was replete with roving commissions and was unsupported by the evidence[.]" Instruction 9 charged the jury on contributory negligence[17] as follows:

> In your verdict you must assess a percentage of fault to Plaintiff if you believe:
>
> First, Plaintiff failed to report defective seats including but not limited to loose and wobbly seats, failed to follow railroad safety rules, or failed to operate the locomotive in a safe manner, and

---

[17] The reduction in a plaintiff's damages in proportion to his fault is often referred to as "comparative fault," however the FELA—and thus the MAIs for an FELA claim—refer to this concept as "contributory negligence."

17

Second, Plaintiff in any one or more of the respects submitted in Paragraph First, was thereby negligent; and

Third, such negligence of Plaintiff resulted in whole or in part in Plaintiff's injury.

Instruction 9 was patterned after MAI 24.04(B) [2012 Revision]. We find no error in the trial court's use of Instruction 9.

*Standard of Review*

Whether the jury was properly instructed regarding the plaintiff's contributory negligence "is a question of law this Court reviews de novo." *See Hayes v. Price*, 313 S.W.3d 645, 650 (Mo. banc 2010). "This Court reviews the record in the light most favorable to submission of the instruction." *Id.* "Any issue submitted to the jury in an instruction must be supported by substantial evidence from which the jury could reasonably find such issue." *Id.* (internal marks omitted). "Substantial evidence is evidence which, if true, is probative of the issues and from which the jury can decide the case." *Id.*

*Analysis*

Miller first claims that Instruction 9 was erroneous because it improperly allowed the jury to consider whether Miller assumed the risks of his employment. However, as discussed in Point II, each of the contributory negligence submissions in the first paragraph of Instruction 9 were proper statements of the law.

Miller next argues that "each of the separate disjunctive submissions in Instruction 9 constitutes a roving commission for the jury." We disagree.

"An instruction is a roving commission if it assumes a disputed fact or submits an abstract legal question that allows the jury to roam freely through the evidence and choose any facts which suit[] its fancy or its perception of logic to impose liability." *Duren v. Union Pac. R.R. Co.*, 980

18

S.W.2d 77, 79 (Mo. App. E.D. 1998) (quoting *Seitz v. Lemay Bank & Trust*, 959 S.W.2d 458, 463 (Mo. banc 1998)) (internal marks omitted). "If the instruction fails to advise the jury what acts or omissions of the party, if any, found by them from the evidence, would constitute liability, then it may be considered a roving commission." *Id.* "In such a case, the instruction is considered too general, submitting a question to the jury in a broad, abstract way without being limited to any issues of fact or law developed in the case." *Id.*

Here, each of the disjunctive submissions advised the jury what acts or omissions of Miller would constitute liability: a failure to report defective seats, a failure to follow railroad safety rules, or a failure to operate the locomotive in a safe manner. Each submission was equally, if not more, narrow and specific than the submission contained in the general negligence verdict director, which asked the jury to find Norfolk liable if it "failed to provide reasonably safe conditions for work." Courts have repeatedly upheld this phrase—or one substantially similar—as adequately submitting the defendant's liability in an FELA case. *See, e.g.*, *Dunn v. St. Louis-San Fran. Ry. Co.*, 621 S.W.2d 245, 255 (Mo. banc 1981) (rejecting the railroad's argument that a negligence verdict director charging that the railroad "failed to provide reasonably safe methods of work" was a roving commission; the instruction submitted only the ultimate issue and avoided evidentiary detail). Accordingly, we find the submissions in Instruction 9 did not constitute "roving commissions." *See* Rule 70.02(b) ("Where an MAI must be modified to fairly submit the issues in a particular case, . . . then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts.").

Finally, Miller argues that Instruction 9 was unsupported by the evidence. We again disagree. The jury heard evidence that Norfolk's safety rules required employees to report

19

defective equipment and that Miller failed to report defective or "loose or wobbly" seats. Regarding Miller's failure to operate the locomotive in a safe manner, one of his theories was that the "coupling impacts" and jerking from "slack action" contributed to his back injuries.[18] Evidence was presented that Miller was trained to control the amount of slack action on the locomotive and that locomotive engineers are taught how to appropriately couple cars and avoid rough coupling. From this evidence, it was proper for the jury to consider whether Miller's operation of Norfolk's locomotives contributed to his injuries.

In sum, we find that Instruction 9 properly stated the law, was supported by the evidence, and did not constitute a roving commission for the jury.

### *Conclusion as to Point III*

The trial court did not err in giving Instruction 9 submitting Miller's contributory negligence. Point III is denied.

### Conclusion

We reverse and vacate the entry of judgment in favor of Norfolk on Miller's claim of negligence *per se* and remand for a new trial on that theory of recovery only. The judgment is affirmed in all other respects.

EDWARD R. ARDINI, JR., JUDGE

All concur.

---

[18] Slack action is the movement between railcars that are coupled together. Coupling involves linking railcars together to "mak[e] up trains."